IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| SARA A. FETTER DYNASTY QSST TRUST U/A OCTOBER 31, 2018, by and through its Trustee, Sara A. Fetter, and SARA A. FETTER<br><br>Plaintiffs/Counterclaim Defendants,<br><br>vs.<br><br>FIDELITY AUTOMOTIVE, INC. (now known as Fetter Funds, Inc.), and MATTHEW D. FETTER<br><br>Defendants/Counterclaim Plaintiffs. | No. 4:23-cv-00019-SEB-KMB |

## **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE**

Defendants Fidelity Automotive, Inc. (now Fetter Funds, Inc.) ("Fetter Funds") and Matthew D. Fetter ("Matthew"), by and through their undersigned counsel, respectfully submit this memorandum in support of their Motion to Transfer Venue [Dkt. 18] and in reply to the response [Dkt. 24] filed by Plaintiffs Sara A. Fetter Dynasty QSST Trust U/A October 31, 2018, by and through its Trustee, Sara A. Fetter ("Sara's Trust"), and Sara A. Fetter ("Sara").

### INTRODUCTION

This case is about the management and investments of a Florida corporation that all occur in Florida. Thus, this case should be managed and tried in the Northern District of Florida. When Plaintiffs filed this case, Matthew had been running Fetter Funds from Florida for nearly two-and-a-half years and Fetter Funds' predecessor had long since sold all of its assets. Even Sara has substantial ties to Florida. She serves as director of Fetter Funds, receives a substantial salary from Fetter Funds, maintains a Florida drivers' license, and admits that, in each of the last two years, she spent at least 30-40 days per year in Florida. [Dkt. 24-1 at ¶ 7.] There is no merit to the

22803914.v1

contention that any district other than the Northern District of Florida has a closer relationship to this case or would be a more convenient forum to resolve the parties' dispute.

The present location of the parties, witnesses, and evidence in Florida control whether the Northern District of Florida is the more convenient forum—not the *former* location of business assets sold long before this case was filed. Transferring this case is also in the interest of justice. The Northern District of Florida can efficiently bring this case to trial and has an interest in adjudicating the rights of its citizens. For all these reasons, and the reasons discussed below and in Defendants' opening brief, the Court should transfer this case to the Northern District of Florida.

## ARGUMENT

In this case, the Northern District of Florida is the forum that will best serve "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a); *see Heckler & Koch, Inc. v. Precision Airsoft, LLC*, No. 109-CV-485-SEB-JMS, 2010 WL 1257450, at *1 (S.D. Ind. 2010) (granting transfer to Eastern District of Washington where proprietor ran "nearly all of the company's business" in Washington, defendant's "business records, invoices, and other materials offering proof" were in Washington, defendant's employees were in Washington, and potential witnesses were in Washington). Plaintiffs attempt to diminish the significance of the prevailing conveniences and other factors weighing in favor of transfer and then exaggerate the importance of Indiana law, which numerous courts have held only slightly weighs into the transfer decision because any federal court is competent to apply another state's law. Thus, this case should be transferred to the Northern District of Florida pursuant to the proper balancing of factors under 28 U.S.C. § 1404(a).

### A. Defendants' Florida Residence and Citizenship Must Be Afforded More Weight Than Plaintiff's Non-Residence Choice of Forum.

The preference for a plaintiff's forum choice, upon which Plaintiffs so heavily rely in their response, vanishes when that choice is not the in the plaintiff's home state. *See Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, 986 (S.D. Ind. 2016). When plaintiffs do not reside in their chosen forum, "the *defendant's* place of residence becomes more important in determining the convenience of the parties." *Id.* (emphasis added); *see also State Farm Mut. Auto. Ins. Co. v. Est. of Bussell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996) (defendants' place of residence is "more important in determining the convenience to the parties" where chosen forum is not the plaintiff's residence). Here, Defendants' Florida residence and citizenship therefore must be given priority.

Plaintiffs tacitly acknowledge this principle when they assert that, even though they did not bring suit in their home state, their choice of forum still deserves "some weight" because their claims relate to the sale of Indiana-based assets. [Dkt. 24 at 4, quoting *Aero Co. v. Bacou-Dalloz USA Safety, Inc.*, No. 1:03-cv-01406-DFH-VS, 2004 WL 1629566, at *2 n.1 (S.D. Ind. July 21, 2004).] "Some weight" is not significant weight. And, under controlling law, no matter what weight is given Plaintiffs' forum choice, the Court must afford greater weight and priority to Defendants' Florida residence and citizenship. *Commissioning Agents, Inc.*, 187 F. Supp. 3d at 986; *State Farm Mut. Auto. Ins. Co.*, 939 F. Supp. at 651.

Plaintiffs later appear to re-argue this point by suggesting that their claims' relationship to Indiana re-establishes a "strong preference" for their choice of forum. [Dkt. 24 at 6, quoting *Am. Com. Lines, LLC v. Ne. Mar. Inst., Inc.*, 588 F. Supp. 2d 935, 945 (S.D. Ind. 2008).] But Plaintiffs' logic is flawed. The case cited, *American Commercial Lines*, states that "[w]hen a plaintiff's forum choice does not represent the primary site of material events, […] that choice is entitled to **less deference**." *Am. Com. Lines, LLC*, 588 F. Supp. 2d at 945 (emphasis added). It does not hold—as

Plaintiffs argue—that courts may ignore the fact that a plaintiff chose a forum outside its home state upon a showing of some other relationship to the forum. That would flip the rule in *American Commercial Lines* on its head. The law on this issue is not complicated. When a plaintiff chooses a forum that is either outside its home state or not the primary site of material events, that choice is entitled to less weight and the court must afford greater weight to the Defendants' place of residence. *Commissioning Agents, Inc.*, 187 F. Supp. 3d at 986; *State Farm Mut. Auto. Ins. Co.*, 939 F. Supp. at 651.

Accordingly, this factor weighs in favor of transfer to the Northern District of Florida, where Matthew resides and Fetter Funds is incorporated and has its principal place of business.

### B. The Northern District of Florida Is the Most Convenient Forum for the Parties.

For all but one party, the Northern District of Florida is clearly the most convenient forum. Matthew and Fetter Funds' Vice President live and work in the Northern District of Florida, which is also where Fetter Funds has its principal place of business. [Dkt. 19-1 at ¶ 12.] The only party for whom the Northern District of Florida is not clearly more convenient is Sara.

Plaintiffs also overstate the inconvenience to Sara in transferring this case to Florida. By her own admission, Sara has a residence available to her in Florida, maintains a Florida drivers' license, and normally spends 30-40 days a year in Florida. [Dkt. 24-1 at ¶ 7.] Plaintiffs shrug off Sara's substantial Florida ties, asserting that "contrary to Defendants' assertions, (Dkt. 19 at 7), Sara does not spend the majority of each year in Florida either but rather visits for approximately 30-40 days per year." [Dkt. 24 at 6.] First, Defendants never made that assertion. [*See* Dkt. 19 at 7 (noting that Sara "also spent considerable time in Florida").] Second, spending 30-40 days a year in Florida is a considerable amount of time in Florida. On average, Americans use only 20.3 days of vacation per year. U.S. Travel Association, *State of American Vacation 2018*, at 3,

[www.ustravel.org/sites/default/files/media_root/document/2018_Research_State%20of%20American%20Vacation%202018.pdf](www.ustravel.org/sites/default/files/media_root/document/2018_Research_State%20of%20American%20Vacation%202018.pdf) (long term average days of vacation used by Americans, 1978-2000) (last visited April 20, 2023). Sara spent almost double that amount of time in Florida each year for the past two years. No matter how you slice it, 30-40 days is a lot of time in Florida. Sara has proven that she is comfortable traveling to and from Florida.

Sara's claim that Matthew is better able to bear the expense of trial in this District is also not well-founded. [*See* Dkt. 24 at 7, citing *Commissioning Agents, Inc.*, 187 F. Supp. 3d at 987.] Sara could arrange any necessary travel for this case to coincide with one of her presumably several trips a year to Florida for personal purposes. Neither Matthew nor Fetter Funds has any business in Indiana. Matthew also does not have access to a free place to stay in Indiana, while Sara has access to her mother's home and another residence in Florida. Sara's travel burden is therefore significantly less than Matthew's burden.

Fetter Funds is also a small company. It is not in the same position as a large public company with a budget for litigating in a foreign district. *Cf. Volkswagen Aktiengesellschaft v. Dee Eng'g, Inc.*, No. 1:02-CV-1669-LJM, 2003 WL 1089515, at *3 (S.D. Ind. Mar. 4, 2003) (finding Volkswagen was in a better position to bear the cost of litigating in California forum).

Finally, Plaintiffs also opine regarding the reasonable expectations of the parties. As a director of a Florida corporation who is being paid a substantial salary by that corporation, Sara should reasonably expect that, from time to time, she will need to spend time in Florida. Conversely, Defendants did not and would not reasonably expect to be pulled into Indiana court about a transaction that was unanimously approved by its predecessor's directors *and* stockholders (which included both Plaintiffs) more than a year earlier.

Nothing in Plaintiffs' response changes the fact that the Northern District of Florida is the most convenient forum for most of the parties and would constitute only a minor inconvenience, if any, for Sara.

**C. The Northern District of Florida Is Most Convenient for Non-Party Witnesses.**

"The convenience of witnesses is often viewed as the most important factor in the transfer balance," not just an "important factor" as Plaintiffs assert. *Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989), aff'd, 979 F.2d 81 (7th Cir. 1992), citing C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE, § 3851 at 264 (1976); *see also Am. Com. Lines, LLC*, 588 F. Supp. 2d at 946 ("More important than convenience to the parties, however, is consideration of any potential convenience or inconvenience to non-party witnesses."). [*Cf.* Dkt. 24 at 8, citing *Am. Com. Lines, LLC,* 588 F. Supp. 2d at 946.] Here, this most important factor weighs heavily in favor of transferring this case to Florida.

Plaintiffs do not identify a single witness in this case who resides in Indiana. On the other hand, Defendants identified many witnesses who either reside in Florida or could much more easily testify in this case if it were transferred to Florida. Matthew lives and works in the Northern District of Florida, as does Fetter Funds' VP, Trevor Schroerlucke. Both Sara's Trust and Matthew's dynasty trust were created by their mother, Phyllis Fetter ("Phyllis"). To the extent that there is a dispute regarding the terms of the trusts and their intended beneficiaries, Phyllis will be an important witness in this case. Finally, Chuck Tapp is the executive at American Auto Auction Group, LLC ("AAAG") who took the lead in negotiating the sale of Fidelity's auto auction business. Tapp conducted many of those meetings with Matthew in-person in Florida. Conducting business in Florida was not a problem for Tapp because he has a house in the same Florida

neighborhood as Matthew's home. Appearing for a deposition in Florida will not be nearly as burdensome for Tapp as appearing in this District.[1]

Witness testimony will be critical to the disposition of the parties' claims and counterclaims. Plaintiffs suggest that the Court should ignore this factor because "this case will largely turn on Indiana law." [Dkt. 24 at 8.] This argument fails for at least two reasons. First, as discussed below, this case will not turn exclusively on Indiana law. It will turn on a combination of Indiana and Florida law. Second, non-party witness testimony will corroborate the parties' testimony and provide independent perspectives of Fetter Funds' and its predecessor's actions, as well as the actions of their respective directors and shareholders.

Plaintiffs argue that the convenience of Defendants' non-party witnesses should not be given substantial weight without specific details about their anticipated testimony, while simultaneously asserting that "Plaintiffs cannot, at this premature stage, rule out the potential for obtaining discovery from non-party witnesses or calling them at trial." [Dkt. 24 at 8.] Plaintiffs clearly want to have their cake and eat it too. Defendants' timely filing of their motion to transfer venue, before even the parties' Rule 26(f) conference, necessarily means that they have not finalized a proposed case management plan, much less designated the precise testimony expected from their witnesses at trial. Moreover, Defendants identified by name the specific witnesses for whom testifying in Florida would be more convenient and the nature of their relationship to this case. The subject matter of their testimony naturally corresponds with those relationships, e.g., Schroerlucke can testify regarding the corporate actions at issue, Tapp can testify regarding the

---

[1] Plaintiffs' internet sleuthing evidently revealed that Tapp resides in Nashville, Tennessee. [Dkt. 24 at 9 n. 2.] Nashville is not close to this District. And the fact that Tapp resides in Nashville does not change the fact that he has a house in the Northern District of Florida. Plaintiffs also note that AAAG's CFO, Charles Kunkel, resides in Indianapolis, *see id.*, but neither Plaintiffs nor Defendants identified Kunkel as a potential witness.

sale of the auto auction business, and Phyllis can testify regarding the terms of the parties' respective trusts. This is a sufficient showing under §1404(a). *See Boone v. Sulphur Creek Resort, Inc.*, 749 F. Supp. 195, 202 (S.D. Ind. 1990) ("When a party seeks the transfer on account of the convenience of witnesses under §1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.") (internal quotes omitted) (quoting *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978)).

Plaintiffs' cases on this issue are distinguishable. In *Boone*, the evidence presented in support of the motion to transfer "was almost nonexistent." 749 F. Supp. at 202. The defendant corporation identified only one witness, who was its principal officer. Here, Defendants have identified non-party witnesses in addition to Matthew. In *Commissioning Agents, Inc.*, the defendants seeking transfer simply submitted a list of non-party witnesses who lived beyond the reach of the forum. 187 F. Supp. 3d at 988. The defendants did not provide any indication of each witnesses' relationship to the allegations, as Defendants have provided here. Similarly, in *Summit Group Holdings, LLC v. O'Donnell*, the defendant seeking transfer made no showing regarding the subject matter of the witnesses' testimony, or even where the witnesses resided. *See Summit Grp. Holdings, LLC v. O'Donnell*, No. 1:06-CV-339 RL, 2007 WL 1549920, at *6 (N.D. Ind. May 25, 2007). None of these cases contain a showing similar to Defendants' showing here.

In sum, the non-party witnesses who can testify regarding the material allegations in this case are best served by transfer to the Northern District of Florida.

**D. The Parties Will Have Easier Access to All Sources of Proof in Florida.**

This case is about a Florida corporation whose principal place of business, including its books and records, have been in Santa Rosa Beach, Florida since November 2021. [Dkt. 19-1 at ¶¶ 9, 10.] Plaintiffs again attempt to diminish the significance of this factor because it does not

weigh in their favor. They argue that the physical location of books and records is less important due to the availability of photocopying, faxing, and digital scanning. [Dkt. 24 at 10.] The "relative ease of access to sources of proof," however, remains a relevant factor in the transfer determination under § 1404(a). *See People for Ethical Treatment of Animals, Inc. v. Lowe*, No. 417CV00186RLYDML, 2021 WL 7210723, at *2 (S.D. Ind. July 1, 2021). Courts in this District recognize that not all documents are electronic and the federal rules do not require a producing party to scan or digitize hard-copy documents for production. *See id.* (granting motion to transfer case to W.D. Oklahoma where all "documents and records—to the extent that they are not electronic—are located in Oklahoma"); § 2212 *Form and Time of Request for Inspection*, 8B Fed. Prac. & Proc. Civ. § 2212 (3d ed.) ("Business records should generally be examined at the place where they are kept, at least where the documents requested are large in number and their production poses some inconvenience.").

The physical location of Fetter Funds' books and records, in addition to the location of most material witnesses, is therefore another relevant factor weighing in favor of transferring this case to the Northern District of Florida.

### E. Transferring this Case to the Northern District of Florida Is In the Interest of Justice.

It is in the interest of justice to transfer this case because it will proceed as efficiently, if not more quickly, toward a resolution in the Northern District of Florida; Florida has the closest relationship to the controversy at issue; and the Northern District of Florida is most familiar with Florida law and fully capable of applying the Indiana dissenters' rights statute.

#### 1. The Northern District of Florida Is a Highly Efficient Forum.

Defendants noted in their opening brief that the median time interval from filing to trial in the Northern District of Florida is only 24.3 months, compared to 43.3 months in the Southern

District of Indiana. [Dkt. 19 at 9; *see also Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986) ("[T]he interest of justice may be served by a transfer to a district where the litigants are more likely to receive a speedy trial.").] In response, Plaintiffs point to another statistic, the median time from filing to disposition, which is 22.4 months in the Northern District of Florida and 12.6 months in the Southern District of Indiana. [Dkt. 24 at 12.] This lone statistic, however, does not show that the Southern District of Indiana is the more efficient forum. The same data also shows that just 1% of civil cases in the Northern District of Florida are over three years old, compared to 47.4% of civil cases pending in the Southern District of Indiana. *See* Combined Civil and Criminal Federal Court Management Statistics, https://www.uscourts.gov/sites/default/files/data_tables/ fcms_na_distcomparison1231.2022.pdf (December 31, 2022). Clearly, the Northern District of Florida is a highly efficient forum capable of moving this case quickly toward a resolution.

**2. Florida Has the Closest Relationship to the Parties' Current Dispute.**

Plaintiffs would have the Court ignore the reality that the parties have literally moved on from the Indiana auto auction business that Fidelity sold long ago and established a new business in Florida. Matthew has been running Fetter Funds' operations from Florida for over two-and-a-half years. Sara, as a director and shareholder of Fidelity and now Fetter Funds, reviewed and approved the transactions that facilitated the move to Florida. Regardless of outcome, this action will affect the future of a Florida corporation. There is no one in Indiana with a dog in this fight.

Plaintiffs assert that transfer should be denied due to the State of Indiana's "local interest in deciding local controversies at home." [Dkt. at 13.] There is no local controversy in Indiana, however, as demonstrated by comparison with the cases cited by Plaintiffs. In *Commissioning Agents, Inc.*, for example, the court concluded that "the Southern District of Indiana has a strong

10

interest" in resolving the parties' dispute due to the state's "significant connection to the relevant events." 187 F.Supp.3d at 990. Indiana's connection to this case pales in comparison to the allegations in *Commissioning Agents, Inc*. Here, Matthew and Sara are Florida and Kentucky residents, respectively, and their dispute boils down to a disagreement regarding the management of a Florida corporation's assets—which will be resolved under Florida and Indiana law. In *Commissioning Agents, Inc.*, the plaintiff was an Indiana corporation with its principal place of business in Indianapolis that ran "its accounting, human resources, marketing, administrative, data-management, and technology functions out of Indianapolis." *Id.* at 983. "In addition, its senior management, training facilities, and cloud-based information technology center are all located in Indianapolis." *Id.* If that were not enough, the plaintiff alleged that the defendant, a former employee, "lied to, defrauded, and stole from [plaintiff] for the benefit of himself and [plaintiff's] competitors." *Id.* (alleging, among others, claims for tortious and criminal conversion, theft and receiving stolen property, misappropriation of trade secrets, violations of the federal Racketeer Influenced and Corrupt Organizations Act and Indiana's Corrupt Business Influence Act"). This case does not involve an Indiana corporation, much less one that was allegedly victimized by a pattern of criminal racketeering activity under Indiana's Corrupt Business Influence Act.

Plaintiffs also cite *Emmis Publ'g, L.P. v. Hour Media Group LLC*, No. 1:17-cv-02504-SEB-MJD, 2018 WL 3127172 (S.D. Ind. April 17, 2018). [Dkt. 24 at 13.] But that case involved a motion to dismiss for lack of personal jurisdiction, not a motion to transfer venue. Additionally, the court found that it had personal jurisdiction in part because the parties' purchase agreement included a choice-of-law provision, which "reinforce[s a defendant's] affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Emmis Publ'g, L.P.*, No. 117CV02504SEBMJD, 2018 WL 3127172, at *5 (internal quotes omitted) (quoting *Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985). There is no Indiana choice-of-law provision at issue here. And, if the foreseeability of possible litigation is relevant here, it stands to reason that Sara, as a director of a Florida corporation, should reasonably expect that she might be required to litigate in Florida.

Notwithstanding Plaintiffs' assertions, Florida is the state with the local interest in resolving this dispute between the directors and shareholders of a Florida corporation.

### 3. The Northern District of Florida Knows Florida Law and Is Fully Capable of Construing Indiana's Dissenters' Rights Statute.

Plaintiffs' assertion that this case turns on Indiana law, not Florida law, oversimplifies parties' dispute. Plaintiffs bring a claim under the Indiana dissenters' rights statute and related common law claims, but Defendants' counterclaim is based on Sara's conduct as a director and shareholder of Fidelity in Indiana **and** Fetter Funds in Florida. It is axiomatic that the managers of a Florida corporation are governed by Florida law. *See 100079 Canada, Inc. v. Stiefel Lab'ys, Inc.*, No. 11-22389-CIV, 2011 WL 13116079, at *9 (S.D. Fla. Nov. 30, 2011) ("Claims involving or implicating the relationship among and between a corporation and its officers, directors, or shareholders are subject to the 'internal affairs' doctrine.") (applying Florida law), quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) ("internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders"). This case therefore cannot be resolved by looking only to Indiana law, as Plaintiffs suggest.

Plaintiffs also exaggerate the importance of whether an Indiana or Florida court applies Indiana law. Plaintiffs bluntly argue, for example, that this District's familiarity with Indiana law "weighs against transfer." [Dkt. 24 at 11 (quoting *Aearo Co. v. Bacou-Dalloz USA Safety, Inc.*,

No. 1:03-CV-01406-DFH-VS, 2004 WL 1629566, at *3 (S.D. Ind. July 21, 2004)). Yet the court in *Aearo* acknowledged that "the judges in the Southern District of California could certainly apply Indiana law" and, therefore, any familiarity with Indiana law weighed "at least slightly" toward denying transfer. *Aearo Co.*, 2004 WL 1629566, at *3. *Accord Am. Com. Lines, LLC v. Ne. Mar. Inst., Inc.*, 588 F. Supp. 2d 935, 946 (S.D. Ind. 2008) ("Judges in the District of Massachusetts are certainly competent to apply Indiana law") (internal quotes removed). Moreover, whatever slight weight might be accorded to this District based on Indiana law, the same weight must be accorded to the Northern District of Florida due to its familiarity with Florida law.

Additionally, as this Court has recognized, a determination that a certain forum is most familiar with the applicable law "will not override the other considerations relevant to the transfer issue" that weigh in favor of a contrary decision (here, transfer). *Boone,* 749 F. Supp. at 202. Plaintiffs' only substantial argument for denying transfer is that Indiana law applies to some claims. That argument is not sufficient where almost every other factor weighs in varying degrees (and some quite heavily) in favor of transferring this case to the Northern District of Florida.

## **CONCLUSION**

Weighing the relevant factors, the Northern District of Florida is the most convenient and just forum for this case. Defendants therefore respectfully request that the Court grant their motion to transfer venue of this case to the Northern District of Florida, Pensacola Division.

Respectfully submitted,

Gregory A. Neibarger (22095-49)
Michael A. Dorelli (20862-49)
Peter T. Snow (37240-89)
DENTONS BINGHAM GREENEBAUM LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204
Telephone: (317) 635-8900
Facsimile: (317) 236-9907
Greg.Neibarger@dentons.com
Michael.Dorelli@dentons.com
Peter.Snow@dentons.com

*Attorneys for Defendants*