UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

SARA A. FETTER, et al.,               )
                                      )
              Plaintiffs,             )
                                      )
       v.                             )        No. 4:23-cv-00019-SEB-KMB
                                      )
MATTHEW D. FETTER, et al.,            )
                                      )
              Defendants.             )

**ORDER DENYING DEFENDANTS' MOTION TO TRANSFER**

This cause is before the Court on the Motion to Transfer Venue [Dkt. No. 18] filed by Defendants, Fidelity Automotive, Inc. ("Fidelity"), (now Fetter Funds, Inc.), and Matthew D. Fetter ("Matthew"), on March 31, 2023. Plaintiffs, Sara A. Fetter ("Sara") and Sara A. Fetter Dynasty Qsst Trust ("Sara's Trust"), have brought this litigation against Defendants alleging violations of Indiana's Dissenters' Rights Statute as well as a promissory estoppel claim. Additionally, Plaintiffs allege that Defendant Matthew breached his statutory and fiduciary duties under Indiana law in connection with the sale of Fidelity's assets.

Defendants request a transfer of this case from the Southern District of Indiana–New Albany Division to the Northern District of Florida–Pensacola Division, arguing that Florida is a more convenient location for the parties and witnesses and that the interest of justice weighs in favor of a venue transfer [Dkt. No. 18]. Plaintiffs oppose

1

transfer. For the reasons detailed in this entry, we <u>DENY</u> Defendants' Motion to Transfer Venue.

### **Factual Background**

Plaintiff Sara. A. Fetter ("Sara") is a Kentucky citizen (Sara Aff. ¶ 2), and her brother, Defendant Matthew D. Fetter ("Matthew"), is a Florida citizen. Until its sale in 2021, Defendant Fidelity was a subchapter S corporation incorporated in Indiana operating as an automobile auction business under the name "Clark County Auto Auction" located in Jeffersonville, Indiana. (Compl. ¶ 10; Answer ¶ 10; Matthew Decl. ¶ 9). At the time of the sale, Sara, through her trust (Plaintiff Sara's Trust), was a 30% shareholder of Fidelity, and Matthew owned the remaining 70% of the stock in Fidelity. (Compl. ¶ 10; Answer ¶ 10.) Matthew was engaged in the day-to-day operations of Fidelity (Compl. ¶ 11; Answer ¶ 11), while Sara received a salary without performing any job duties or daily responsibilities in the company (Matthew Decl. ¶ 3).

In September 2020, Matthew moved to Florida and began managing Fidelity from Miramar Beach. (*Id.* at ¶ 4.) Shortly thereafter, Matthew began negotiating on Fidelity's behalf with American Auto Auction Group, LLC ("AAAG"), and, in October 2020, the two companies entered into a confidentiality agreement governing their negotiations regarding AAAG's possible purchase of Fidelity's business assets. (*Id.* at ¶ 6.) In June 2021, Fidelity and AAAG signed a confidential term sheet outlining the potential sale (*Id.* at ¶ 7), and on September 15, 2021, Sara and Matthew "executed a Joint Action of the Board of Directors and the Stockholders Taken By Unanimous Written Consent (the "Consent")," approving the sale of Fidelity's auto auction business assets to AAAG (*Id.*

2

at ¶ 8). On September 17, 2021, Fidelity sold its auto auction business assets to AAAG and closed its Indiana headquarters, opening new headquarters in Santa Rosa Beach, Florida, in November 2021. (*Id.* at ¶ 9.) As of January 27, 2022, Fidelity's Indiana headquarters had been relocated to Florida and the residual business was renamed Fetter Funds, Inc. (*Id.* at ¶ 10.)

Sara currently receives a $70,000 salary from Fetter Funds as a "Director" of the company. (*Id.* at ¶ 13.) While Sara is not involved in the day-to-day operations of Fetter Funds in Florida and has never resided permanently there, she has spent approximately thirty to forty days in Florida each of the past few years, primarily at her parents' home in Sanibel. (Sara Aff. ¶¶ 6–7.) According to Matthew, Sara currently maintains a Florida driver's license with an address for a residence in Sanibel. (Matthew Decl. ¶ 5.) Sara, however, counters that she has resided in Kentucky at all times relevant to this litigation and as recently as 2022, she filed a joint tax return in Kentucky. (Sara Aff. ¶ 5.)

Plaintiffs originally brought this action in the Clark Superior Court on January 19, 2023 (Dkt. No. 1-1.) Defendants removed the matter to our court on February 10, 2023, asserting diversity jurisdiction. (Dkt No. 4-2.) Plaintiffs allege in this litigation that Matthew promised Sara that she would receive 30% of the profits from the sale to AAAG (Compl. ¶ 17), but he has failed to distribute any sale proceeds to Sara's Trust (Compl. ¶ 19). Plaintiffs claim that (1) both Defendants violated Indiana's Dissenters' Rights Statute, (2) Matthew breached his statutory duty under Indiana law with respect to dissenters' rights proceedings, (3) Matthew breached his fiduciary duties owed to

3

Plaintiffs, and (4) the doctrine of promissory estoppel is applicable here and should be invoked against Defendants. (Compl. ¶ 30–52.)

On March 31, 2023, Defendants moved to transfer this litigation to the Northern District of Florida, arguing that transfer would be convenient to the parties, witnesses, and is in the interest of justice. In support of their motion to transfer, Defendants identify as possible witnesses a few individuals, namely, Fetter Funds Vice President Trevor Schroerlucke, Phyllis Fetter ("Phyllis"), who is Sara and Matthew's mother, and AAAG CEO Chuck Tapp, who led the sale negotiations, who are likely to provide relevant testimony in this matter. More specifically, Defendants contend that Mr. Schroerlucke will provide testimony relating to the "corporate actions at issue," (Dkt. No. 31 at 7), that Phyllis's testimony will be relevant to any dispute that may arise regarding the parties' trusts (Dkt. No. 19, 7–8; Dkt. No. 31 at 7 n.1), and that Mr. Tapp is expected to testify regarding the sale of Fidelity's assets (Dkt. No. 31 at 8). Mr. Schroerlucke lives and is employed by Fetter Funds in Florida, Phyllis resides in Lee County, Florida, and Mr. Tapp, who owns a house in Florida, but apparently, per his company's biography, resides in Nashville, Tennessee. In addition to these three named individuals, Defendants have also summarily referenced other non-party witnesses who may have relevant testimony, but have provided no specific information regarding the identities of those witnesses or the nature of their testimony. (Dkt. No. 19, 8.)

Plaintiffs oppose transfer, arguing that the convenience factors and the interest of justice weigh in favor of maintaining the litigation in the Southern District of Indiana as that is Plaintiffs' chosen forum and the main situs of material events at issue in this

litigation. Defendants' motion, having now been fully briefed by the parties, is ripe for
ruling.

### Legal Analysis

## I.     Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district
court may transfer any civil action to any other district or division where it might have
been brought or to any district or division to which all parties have consented." 28 U.S.C.
§ 1404(a). The purpose of the statute is "'to prevent the waste of time, energy and money
and to protect litigants, witnesses, and the public against unnecessary inconvenience and
expense.'" *RCA Trademark Mgmt. S.A.S. v. Voxx Int'l Corp.* No. 1:14–cv–00088–TWP–
TAB, 2014 WL 3818289, at *2 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616
(1964)). Transfer is appropriate under § 1404(a) when the moving party establishes that
"(1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the
transferee district, and (3) the transfer will serve the convenience of the parties, the
convenience of the witnesses, and the interest of justice." *Commissioning Agents, Inc. v.
Long*, 187 F. Supp. 3d 980, 985 (S.D. Ind. 2016) (citing *RCA Trademark Mgmt.*, 2014
WL 3818289, at *2; *State Farm Mut. Auto. Ins. v. Est. of Bussell*, 939 F. Supp. 646, 651
(S.D. Ind. 1996)).

## II.    Discussion

The parties do not dispute that venue and jurisdiction are proper both in the
Southern District of Indiana and the Northern District of Florida. Thus, the only issues
before us are whether a venue transfer would be more convenient for the parties and

witnesses and whether transfer favors the interests of justice under § 1404(a). Defendants have the burden, by reference to particular circumstances, to prove that the Northern District of Florida is "*clearly* more convenient" than the Southern District of Indiana. *Commissioning Agents, Inc. v. Long.*, 187 F. Supp. 3d 980, 986 (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986); *Overton & Sons Tool & Die Co. v. Precision Tool, Die & Mach. Co.*, No. 1:13-cv-01302-TWP-DKL, 2014 WL 1669863, at *5 (S.D. Ind. Apr. 28, 2014)). Courts use an "individualized, case-by-case consideration of convenience and fairness" to determine whether a transfer is appropriate. *Commissioning Agents,* 187 F. Supp. 3d at 985 (citing *RCA Trademark Mgmt. S.A.S. v. Voxx Int'l Corp.*, No 1:14–cv–00088–TWP–TAB, 2014 WL 3818289, at *2 (S.D. Ind. Aug. 4, 2014); *State Farm Mut. Auto. Ins. v. Est. of Bussell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996)).

### A.    Convenience Factors

In analyzing convenience, courts consider the "convenience of the parties; the convenience of the witnesses; [and] the location of material events and material evidence." *Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, 985 (S.D. Ind. 2016); *see also Rsch. Automation, Inc. v. Shrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010); *MDS Inc. v. Covance Inc.*, No. 1:07-cv-0455-SEB-JMS, 2007 WL 1959111, at *4 (S.D. Ind. July 2, 2007) (quoting *CMG Worldwide, Inc. v. Bradford Licensing Assoc.*, No. 1:05-cv-0423-DFH-TAB, 2006 WL 3248423 (S.D. Ind. Mar. 23, 2006)). We address each of these factors in turn below.

6

### 1.    Convenience of the Parties

Seventh Circuit district courts typically indicate a "strong preference" for a plaintiff's forum choice. *Am. Com. Lines, LLC v. Ne. Mar. Inst., Inc.*, 588 F. Supp. 2d 935, 945 (S.D. Ind. 2008) (citing *Hinc v. Lime-O-Sol Co.*, 231 F. Supp. 2d 795, 796 (N.D. Ill. 2002); *Cumis Ins. Soc'y v. South-Coast Bank*, 587 F. Supp. 339, 348 (N.D. Ind. 1984)). Although the plaintiff's choice is entitled to less deference and the defendant's residence becomes more important in determining the convenience to the parties when the forum the plaintiff chooses is not her home forum, *State Farm Mut. Auto. Ins. v. Est. of Bussell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996) (citing *Kendall U.S.A., Inc. v. Cent. Printing Co.*, 666 F. Supp. 1264, 1268 (N.D. Ind. 1987)); *Commissioning Agents,* 187 F. Supp. 3d at 986 (S.D. Ind. 2016) (citations omitted), the plaintiff's choice still receives some deference when the forum "bears a substantial relationship to the cause of action." *Aearo Co. v. Bacou-Dalloz USA Safety, Inc.*, No. 1:03–CV–01406–DFH–VS, 2004 WL 1629556, at *2 n.1 (S.D. Ind. July 21, 2004).

Here, while Plaintiffs did file suit outside of their home state Kentucky, Sara resides in Prospect, Kentucky, which is within twenty miles of the New Albany, Indiana courthouse. Moreover, Plaintiffs' claims arise out of events that primarily involve Indiana, such that their choice of forum is entitled to at least some deference. The "business relationship" between the parties formed while Fidelity was still headquartered in Indiana, which relationship eventually led to Matthew's holding 70% of the company's stock and Sara's holding 30%. (Compl. ¶ 10; Answer ¶ 10.) Additionally, as discussed above, Plaintiffs' claims in this lawsuit all arise from alleged failures by Defendants to

7

comply with Indiana statutory and common law duties in connection with the sale of Fidelity's assets and to pay Plaintiffs their share of the profits from the sale of the Indiana company.

The fact that Matthew was managing Fidelity's affairs remotely from Florida at that time, including negotiating the sale of the business while outside of Indiana, and that he subsequently moved Fetter Funds's headquarters and operations to Florida following the events relevant to this litigation had occurred is not enough to shift the situs of material events from Indiana to Florida, when the business misconduct at issue is all alleged to stem from duties imposed by Indiana law and to have occurred when Fidelity was incorporated and had its principal place of business in Indiana. *See Am. Com. Lines*, 588 F. Supp. 2d at 945 (finding the fact that the plaintiff's chosen forum was the "site of the development of the business relationship as well as much of the business misconduct" involved in the allegations weighed against transfer, despite the fact that the defendant operated remotely from the transferee forum). These connections with Indiana suffice to create the "substantial relationship" necessary to give Sara's forum choice at least some deference.

Courts also consider the relative financial impact and hardship of litigation on the respective parties when assessing convenience. *Am. Com. Lines*, 588 F. Supp. 2d at 935. Where one party is a corporation and the other is an individual, courts often find that litigation is likely "more difficult and burdensome" for the individual party. *Hinc*, 231 F. Supp. 2d at 797. Plaintiffs argue that such is the case here, pointing to the fact that

Fidelity's assets were sold for millions of dollars as evidence that Defendants are in the better position to absorb the expense of travel and other costs of litigation.

Defendants rejoin that Fetter Funds is a small company that does not have the same capacity to litigate in a foreign district as a larger company would. They point to the facts that Sara spends a significant amount of time annually in Florida, maintains a Florida driver's license, and has access to free lodging at her parents' residence all in support of their claim that traveling would be more burdensome on Matthew than Sara, given that Matthew no longer has any ties to Indiana and Sara frequently travels to Florida. We note, however, that the residence where Sara stays in Florida is located in Sanibel, which is in the southwest portion of the state, while Pensacola, where the district court is located, is in the northwestern panhandle. Given the distance between Sanibel and Pensacola, Sara's free lodging in Florida would not substantially ease her travel burden. Thus, we are not persuaded that it would be significantly more convenient for Plaintiffs to litigate in Pensacola than it would be for the Defendants to litigate in New Albany.

Defendants also assert that, as Director of Fetter Funds, a Florida company, Sara should "reasonably expect" to be required to travel to Florida on occasion for business. However, as Sara rejoins, Defendants should just as easily expect Indiana litigation, given that this lawsuit arises from actions taken in connection with the sale of Fidelity's assets while the company was incorporated and headquartered in Indiana.

Although the Southern District of Indiana is no doubt a less convenient forum for Matthew and Fetter Funds, "merely shifting inconvenience from one party to another is

not a sufficient basis for transfer." *Rsch. Automation, Inc.*, 626 F.3d at 978. Considering the factors addressed above, we find that moving the litigation from Indiana to Florida would merely "shift inconvenience" for party travel and cost from one side to the other, which is not the purpose of § 1404(a). Therefore, the party-convenience factor does not weigh in favor of transfer.

### 2.   Witness Availability and Accessibility

We turn next to address the relative convenience of witnesses, which is "often viewed as the most important factor in the transfer balance." *Savory v. Cannon*, 2023 WL 3317951, at *4 (N.D. Ill. May 9, 2023) (quoting *Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989)). Courts focus not simply on the number of witnesses located in each forum but also "the nature and quality of the proposed testimony and its relevance to the case." *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 932 (N.D. Ill. 2017). In assessing this factor, courts give less weight to the convenience of party witnesses, including a party's employees, because employees "are usually within the control of the parties and are likely to appear voluntarily in either forum." *Commissioning Agents*, 187 F. Supp. 3d at 988 (citing *Abbott v. Lockheed Martin Corp.*, No. 06-cv-0701-MJR, 2007 WL 844903, at *3 (S.D. Ill. Mar. 20, 2007)).

### i.    Party Witnesses

In addition to Sara and Matthew, whom Plaintiffs assert and Defendants do not contest will be the two most important party witnesses, Defendants contend that other Fetter Funds employees who live and work in Florida, including the company's Vice President, Trevor Schroerlucke, may also be required to present relevant testimony. As

10

discussed above, however, employees of a party company are generally not accorded the same weight in the transfer analysis as non-party witnesses. *See American Commercial Lines*, 588 F. Supp. 2d at 946 (finding that the fact that a witness was the defendant's employee undercut the defendant's argument for transferring due to witness convenience). Although Mr. Schroerlucke lives and works in Florida and may be called as a witness (Matthew Decl. ¶ 12), he is a Fetter Funds executive, and his convenience therefore is not especially relevant. Because Mr. Schroerlucke is assumed to be under the control of his employer, Fetter Funds, and thus likely to appear in either forum, his convenience does not hold significant transfer weight.

### ii.    Non-Party Witnesses

When evaluating the witness component of convenience, courts prioritize non-party witnesses more heavily than party witnesses, *Commissioning Agents*, 187 F. Supp. 3d at 988; *Am. Com. Lines*, 588 F. Supp. 2d at 946, because securing their testimony may require the use of compulsory processes and travel is also more likely to inconvenience non-party witnesses. *Commissioning Agents,* 187 F. Supp. 3d at 988 (citations omitted). However, "only a specific discussion of the convenience of witnesses who will probably produce live testimony at trial is relevant." *Am. Com. Lines*, 588 F. Supp. 2d at 946 (citations omitted). Further, a movant's failure to provide sufficient detail about the testimony and witnesses weighs against transfer. *See Boone v Sulphur Creek Resort, Inc.*, 749 F. Supp. 195, 202 (S.D. Ind. 1990) (citing *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) *overruled on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990)) (finding that the defendant's failure to indicate "who and

how many witnesses it intend[ed] to call" weighed against transfer); *Commissioning Agents*, 187 F. Supp. 3d at 988 (failure to "adequately assert what testimony these witnesses might provide, whether their testimony would be non-duplicative, and whether these witnesses would not be willing to travel to Indiana" weighed against transfer).

Defendants have identified two specific potential non-party witnesses–the parties' mother, Phyllis Fetter (Matthew Decl. ¶ 15), and Chuck Tapp, the AAAG CEO who led the Fidelity sale negotiations (Dkt. No. 19, 8)–as relevant to the transfer analysis. Defendants assert that Phyllis's testimony may be necessary to resolve any disputes regarding the parties' trusts (Dkt. No. 19, 6); Sara disagrees, contending that Phyllis's testimony will likely not be relevant for determining a violation of dissenters' rights (Dkt. No. 24, 8). While it is too early in the litigation to fully determine what Phyllis's anticipated testimony might be or its relevance to resolving the issues before the court, it is also unclear whether Pensacola litigation would ease Phyllis's travel burden. Phyllis resides in Sanibel, in Lee County, Florida, which we note again is located on the southwest side of the state (Dkt. No. 19, 8), far from Pensacola. Should the litigation take place in Pensacola, Phyllis would still need to travel a significant distance from Lee County to be available to testify. Defendants summarily assert that they could more easily transport Phyllis to Pensacola, compared to New Albany (Dkt. No. 19, 8), which while perhaps true, makes clear that a transfer would not entirely remove her travel burden. Moreover, since she is the parties' mother, we anticipate that she is more likely to appear in either forum.

Defendants state that the other non-party witness, Chuck Tapp, led negotiations for AAAG and that his testimony might therefore be required regarding the sale of Fidelity's assets. (Dkt. No. 19, 8; Dkt. No. 34, 7–8.) Defendants do not otherwise expressly indicate how they anticipate using the Tapp testimony or whether he would be unwilling to travel to Indiana, arguing merely that Pensacola would be a more convenient location for Mr. Tapp because he owns a home in Florida. However, as previously noted, Mr. Tapp's biography as set out in his business website identifies his residence as Nashville, Tennessee (Dkt. No. 31, 7 n.1; Dkt No. 24, 9 n.1); *Executive Team*, America's Auto Auction, https://www.americasaa.com/executive-team/ (last visited June 13, 2023), which is closer to New Albany, Indiana, than Pensacola, such that Florida may not necessarily be more convenient, even if Mr. Tapp does own a house in Florida (Dkt. No. 19, 8). Despite the parties' dispute over the degree of convenience/inconvenience for Mr. Tapp to travel to either forum, Defendants acknowledge that Tapp's residence is Nashville (Dkt. No. 31, 7 n.1), a location much closer and therefore more convenient to New Albany than Pensacola.

For these reasons, we find that the convenience of the non-party witnesses at most weighs slightly in favor of transfer, but not as significantly as Defendants argue it does, given that Phyllis would be required to travel a significant distance from her home to reach either forum and Mr. Tapp's identified residence is closer to the Indiana forum.[1]

---

[1] In addition to Phyllis and Mr. Tapp, Defendants have summarily referenced other potential non-party witnesses, such as other AAAG executives (Dkt. No. 19,  8), arguing that it would be more convenient for these unnamed witnesses to appear in Florida. However, Matthew and Fidelity provide no information as to the executives' names, the content or importance of their

### 3.      The Location of Material Events and Evidence

Courts also consider the location of material events in assessing convenience, because "the most convenient forum is frequently the place where the cause of action arose." *Van Dusen v. Barrack*, 376 U.S. 612, 628 (1964). Although the site of the alleged locus of the dispute is not alone determinative, courts consider it as a convenience factor. *Aearo Co.*, 2004 WL 1629566, at *2.

As discussed in more detail above in Section II.A.1., Plaintiffs' claims here arise from alleged misconduct in connection with the sale of Fidelity's assets, which was incorporated and at the time headquartered in Indiana. Therefore, the situs of material events is primarily Indiana, which fact weighs against transfer to the Northern District of Florida.

Defendants assert that the location-of-evidence factor weighs in their favor because "[Fetter Funds's] books and records are in Florida." (Dkt. 31, 9.) However, the location of records and documents is a "small matter" because of modern electronic forms of document retrieval, such as photocopying and faxing. *Aero Co.*, 2004 WL 1629566, at *3 (citing *Undertow Software, Inc. v. Advanced Tracking Technologies, Inc.*, No. 02 C 8065, 2002 WL 31890062 (N.D. Ill. Dec. 30, 2002)). Therefore, "courts often consider neither forum to be more convenient on this basis." *Commissioning Agents*, 187 F. Supp. 3d at 989 (citing *Abbott*, 2007 WL 844903, at *4). Accordingly, the Defendants' assertions regarding their books and records do not weigh in favor of transfer, especially

---

testimony, or their willingness to travel. We therefore do not consider the convenience of these non-party witnesses in our transfer analysis.

because the Defendants provide no indication that electronic transportation of these documents would be difficult.

Considering the convenience of the parties, convenience of the witnesses, and the location of material events and evidence, Defendants have failed to show that transfer would be *clearly* more convenient in this case as it is their burden to establish.

### B.   Interest of Justice

To determine whether the interest of justice weighs in favor of a venue transfer, courts look to docket congestion and likely speed to trial, each court's familiarity with the relevant law, efficiency in "avoiding duplicative litigation," and "the relation of each community to the controversy at issue." *CMG Worldwide, Inc. v. Bradford Licensing Assoc.*, No. 1:05-cv-0423-DFH-TAB, 2006 WL 3248423, at *5 (S.D. Ind. Mar. 23, 2006) (citations omitted); *see also Rsch. Automation, Inc. v. Shrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).  We address each of these factors in turn below.

### 1.   Docket Congestion and Likely Speed to Trial

As part of the interest of justice element, the Court considers "docket congestion and likely speed to trial in each district." *Tama Plastic Indus. v. Pritchett Twine & Net Wrap, LLC*, No. 1:11–cv–783–JMS–DKL, 2012 WL 3966322, at *4 (S.D. Ind. Sept. 11, 2012). One method courts use to evaluate congestion is to "compar[e] the median time between filing and disposition in either district." *Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, 990 (S.D. Ind. 2016) (citing *RCA Trademark Mgmt. S.A.S. v. Coxx Int'l Corp.*, No. 1:14–cv–00088–TWP–TAB, 2014 WL 3818289, at *5 (S.D. Ind. Aug. 4, 2014)); *see also Bruce Lee Enters., LLC v. Ecko Complex, LLC*,  No. 1:09-cv-0398-

WTL-DML, 2010 WL 989909, at *3 (S.D. Ind. Mar. 16, 2010). Lower median times indicate faster filing to disposition intervals. In the Southern District of Indiana, the 2022 median time between filing and disposition for civil cases was 12.6 months, while Florida's same metric was 22.4 months. *Table N/A–U.S. District Courts–Combined Criminal and Criminal Federal Court Management Statistics*, United States Courts (Dec. 31, 2022),

www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2022.pdf.

Therefore, the most recent data indicates that Indiana's filing to disposition time was almost ten months faster than Florida's.

Courts also assess the time from filing to trial to help determine docket congestion. *See High Tech Nat'l, LLC, v. Wiener*, No. 1:19-cv-02489-SEB-MJD, 2019 WL 6329654, at *11 (S.D. Ind. Nov. 26, 2019). In the Southern District of Indiana, the 2022 median time from filing to trial in civil cases was 42.2 months, while Florida's same metric was 25.8 months. *Table N/A–U.S. District Courts–Combined Criminal and Criminal Federal Court Management Statistics*, United States Courts (Dec. 31, 2022),

www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2022.pdf.

Therefore, Florida's filing to trial time was about 16.4 months shorter than Indiana's.

Courts have also assessed pending cases per judgeship and the district's weighted filings per judgship to help determine the docket-congestion factor. *See High Tech Nat'l*, 2019 WL 6329654, at *11. In 2022, the Southern District of Indiana's weighted filings per judgeship was 645 and the assigned judge to this case maintins a 75% docket as a senior judge. In contrast, the Northern District of Florida's was 4,589. *Table N/A–U.S.*

*District Courts–Combined Criminal and Criminal Federal Court Management Statistics*,

United States Courts (Dec. 31, 2022),

www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2022.pdf.

As Defendants point out, however, this statistic is potentially skewed given two pending

MDLs in the Northern District of Florida and only one in the Southern District of

Indiana. *See In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:16-md-2734 (N.D.

Fla.); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885 (N.D. Fla.);

*In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 1:14-ml-

2570-RLY-TAB (S.D. Ind.).

Based on these statistics, with filing to disposition time weighing against transfer,

filing to trial time weighing in favor of transfer, and weighted case filing numbers being

potentially skewed by MDLs, we find this factor to be a wash.

### 2. Familiarity with the Relevant Law

Although federal district court judges are competent to apply state law outside of

the state in which they preside, *High Tech Nat'l*, 2019 WL 6329654, at *11; *see also Am.

Com. Lines, LLC v. Ne. Mar. Inst., Inc.*, 588 F. Supp. 2d 935, 946 (S.D. Ind. 2008), courts

still consider the familiarity of each court with the applicable law when assessing transfer

factors. *Am. Com. Lines*, 588 F. Supp. 2d at 946. Familiarity "weighs at least slightly"

toward litigating in that forum. *Id.* at 947 (internal quotation marks and citation omitted).

Plaintiffs' complaint asserts a dissenters' rights claim under the Indiana Dissenters'

Rights Statute, which allows shareholders to dissent from and receive payment for that

shareholder's shares in the event of various corporate actions, including the sale of a

corporation. (Compl ¶ 22–36); Ind. Code § 23-1-44-8. While Defendants maintain that Florida law will largely govern, because Fetter Funds is now a Florida company (Dkt. 19, 9), Defendants concede a resolution of this litigation will require interpretation of the Indiana Dissenters' Rights Statute (Dkt. 19, 9–10). Additionally, one of Plaintiffs' claims rests on a cause of action created by the Indiana Supreme Court in *Galligan v. Galligan*, 741 N.E.2d 1217, 1225 (Ind. 2001), a decision this court has previously analyzed, but to our own knowledge, the Northern District of Florida has not. *E.g.*, *Shepard v. Meridian Ins. Group*, 137 F. Supp. 2d 1096, 1112–13 (S.D. Ind. 2001). Although the Northern District of Florida is, of course, competent to apply the dissenters' rights statute and the case law interpreting it, the Southern District of Indiana is presumably more familiar with Indiana law. *See Hunter v. Big Rock Transp., Inc.*, No. 1:07-cv-1062-SEB-TAB, 2008 WL 1957775, at *4 (S.D. Ind. May 2, 2008) (determining that the fact that a Wyoming district court would be more familiar with Wyoming law weighed in favor of transfer from the Southern District of Indiana). This interest of justice factor thus weighs, at least slightly, against transfer to the Northern District of Florida.

### 3. Avoiding Duplicative Litigation

There is no duplicative litigation for this case, and the parties do not assert otherwise. (Dkt. No. 19, 10.) Therefore, we need not address this factor.

### 4. The Relationship of Each Community to the Controversy

Courts also address whether the respective forum communities have a relationship to the controversy. Although Florida may have an interest in the controversy because

Fetter Funds is now a Florida corporation, Indiana also has an interest because the case arose in Indiana and will likely implicate Indiana law. Even if, as Defendants assert, the Southern District of Indiana has a reduced interest in Fetter Funds, given that it is now a Florida corporation, the claims brought by Plaintiffs in this litigation under Indiana's Dissenters' Rights Statute and Indiana common law suggest that Indiana has a stronger interest than Florida in interpreting Indiana law and ensuring majority shareholders are complying with the dissenters' rights statute with regard to the treatment of minority shareholders during the sale of an Indiana business. *See Ellis v. T-H Pro. & Med. Collections, Ltd.*, No 1:20-cv-00828-JMS-TAB, 2020 WL 4673258, at *5 (S.D. Ind. Aug. 12, 2020) (finding that Indiana's interest in ensuring compliance with licensing under Indiana law weighed against transfer). Moreover, Defendants present no evidence that conducting this litigation in Indiana would be burdensome for the Indiana community. *Wabash Valley Feed & Grain, LLC v. Hust*, No. 2:11-cv-00014-SEB-WGH, 2011 WL 3902780, at *12 (S.D. Ind. Sept. 6, 2011) (quoting *Hunter*, 2008 WL 1957775, at *4) (noting that litigation should not be burdensome on the people of that community). Therefore, we view this factor as neutral at best, if not as favoring Plaintiffs, and thus does not weigh in favor of transfer.

## III.   Conclusion

For the above reasons, conducting this litigation in the Southern District of Indiana best serves the convenience of the parties and witnesses as well as the interests of justice.

Accordingly, we DENY the Defendants' motion to transfer venue to the Northern District of Florida [Dkt. No. 18].

IT IS SO ORDERED.

Date: _____6/29/2023_____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Michael A. Dorelli
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
michael.dorelli@dentons.com

Meaghan Klem Haller
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
meaghan.haller@dentons.com

Gregory A. Neibarger
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
greg.neibarger@dentons.com

Seema Ramesh Shah
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
sshah@boselaw.com

Dakota Christopher Slaughter
Bose McKinney & Evans LLP
dslaughter@boselaw.com

Peter Snow
Dentons Bingham Greenebaum LLP
peter.snow@dentons.com

Paul D. Vink
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
pvink@boselaw.com