UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| SARA A. FETTER, <br> SARA A. FETTER, <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW D. FETTER, <br> FIDELITY AUTOMOTIVE, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 4:23-cv-00019-SEB-KMB <br> ) <br> ) <br> ) <br> ) <br> ) |

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO SERVE BELATED DISCOVERY

Presently pending before the Court is Plaintiffs' Motion to Serve Belated Requests for Production on the Defendants. [Dkt. 73.] For the reasons explained below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

#### A. Relevant Parties and Claims

The Plaintiffs in this lawsuit are Sara A. Fetter in her individual capacity ("Sara") and in her capacity as Trustee of the Sara A. Fetter Dynasty QSST Trust U/A October 31, 2018 ("Sara's Trust"). Sara and Sara's Trust are suing Sara's brother Matthew D. Fetter in his individual capacity ("Matt") and Fidelity Automotive, Inc. ("Fidelity"), which until recently was the Fetter Family's automobile auction business. Fidelity's assets were sold on September 17, 2021. After the sale, Fidelity was renamed Fetter Funds, Inc. ("Fetter Funds").

Sara and Sara's Trust allege that Matt misrepresented that Sara's Trust would receive a 30% share of the proceeds from the sale of Fidelity, in accordance with its 30% ownership interest in the company, and that Matt would receive the remaining 70% share of the proceeds, in accordance

with his 70% ownership interest in the company. They further allege that Matt and Fidelity failed to provide them with a notice of dissenters' rights as required by Indiana statute. [Dkt. 1-2 Complaint.]

Matt and Fidelity deny that Matt ever represented that Sara's Trust would directly receive a share of the proceeds from the sale of Fidelity. Instead, the proceeds remain held by Fetter Funds, in which Sara's Trust still has a 30% ownership interest. Matt and Fidelity counterclaim that Sara breached her fiduciary duty to Matt and Fidelity by receiving a $70,000 annual salary from Fidelity, and later from Fetter Funds, while serving as one of the company's Directors even though she did not perform any services for company. They also counterclaim that Sara and/or Sara's Trust committed constructive fraud by remaining silent about their intention to liquidate 30% of Fetter Funds when Fidelity's assets were sold. [Dkt. 16 Answer; dkt. 52 Amended Counterclaim.]

**B. Request to Serve Belated Discovery**

The Parties' deadline to serve discovery requests was January 10, 2024. [Dkt. 35 at 5 n.1; dkt. 65 at 2.] Sara and Sara's Trust emphasize that they learned new information during Matt's deposition on January 17, 2024, and they have moved for leave to serve five additional Requests for Production ("RFPs 1-5") based on that information.[1] [Dkt. 73.]

As is relevant to the pending motion, Sara recalls that she, Matt, and their mother Phyllis Fetter ("Phyllis") had a meeting in Sara's office at Fidelity during which Matt represented that Sara and Phyllis would each receive a very large sum of money from the sale. [Dkt. 76-3 at 2.] Sara

---

[1] The Plaintiffs first requested to take Matt's deposition on September 13, 2023, and Fetter Funds' deposition on October 4, 2023. Due to written discovery disputes, the holidays, and the logistical challenges of out-of-state travel, Matt's deposition and Fetter Funds' deposition (for which Matt was the company's Rule 30(b)(6) representative) took place on January 17, 2024. [Dkt. 73 at ¶ 4.] There is no dispute that Plaintiffs acted with reasonable diligence in conducting Matt's deposition. As discussed in more detail below, the dispute is about whether Plaintiffs learned any new and relevant information during Matt's deposition that provides good cause to permit the belated RFPs.

2

believes that this conversation took place either the day Fidelity was sold—September 17, 2021—or in the days leading up to the sale. [*Id.*] Phyllis also remembers this conversation, but she believes it took place a few weeks before Fidelity was sold. [Dkt. 73-1 at ¶ 16.] Matt testified during his deposition that Phyllis' recollection cannot be correct because he was not in Indiana at Fidelity in the weeks leading up to the sale; instead, he was at his residence in Florida during that time. [Dkt. 76-2 at 3.]

RFPs 1-4 seek documents that may help determine Matt's whereabouts during the weeks leading up to the sale of Fidelity on September 17, 2021. [Dkt. 73-2.] The requested documents include calendars, schedules, planners, travel itineraries, airline tickets, hotel bookings, car rental receipts, credit card statements, bank statements, expense reports, financial documents, or other documents that evidence Matt's travel to or from Fidelity's offices in Indiana during the "Lead-Up Period." [*Id.* at 4-5.] The "Lead-Up Period" is defined a January 1, 2021, through September 17, 2021. [*Id.* at 4.]

RFP 5 is unrelated to Matt's whereabouts in the weeks leading up to Fidelity's sale. It seeks "[a]ny corporate resolution, minutes, or other Document through which Sara was made a director of Fidelity or Fetter Funds, including all communications related thereto." [*Id.* at 5.]

## II.  LEGAL STANDARD

"District courts have broad discretion in directing pretrial discovery." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). Federal Rule of Civil Procedure 16(b)(4) provides that the deadlines set forth in the court's case management plan "may be modified only for good cause and with the judge's consent." The good cause standard articulated in Rule 16(b)(4) primarily considers the diligence of the party seeking the amendment to determine whether good cause has been established. *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir.

2005) (citation omitted). The movant bears the burden to establish its diligence under Rule 16(b)(4). *Id.*

### III. DISCUSSION

Sara and Sara's Trust argue that RFPs 1-4 are relevant to a material factual dispute between the Parties regarding whether Matt represented to Sara that 30% of the proceeds from the sale of Fidelity would go directly to Sara's Trust. [Dkt. 73 at ¶ 5.] While this factual dispute was known to the Parties when Matt and Fidelity filed their Answer on March 17, 2023, Sara and Sara's Trust emphasize that Matt's assertion that he had not been at Fidelity's offices in Indiana in the days or weeks leading up to the sale was first learned at his deposition on January 17, 2024. [*Id.* at ¶ 7.] They further argue that RFP 5 relates to how Sara became a Director of Fidelity, and that "Sara testified [on January 19, 2024] in her deposition that she was not aware when or how Matt appointed her a director for Fidelity, or even that she was a director prior to the sale." [*Id.* at ¶ 8.] Thus, Sara and Sara's Trust argue that they have exercised reasonable diligence and shown good cause to serve their belated RFPs.

In response, Matt and Fidelity argue that no new information was learned during Matt and Sara's deposition that would justify serving belated discovery requests. [Dkt. 76 at ¶ 1.] They argue that the dispute about whether this conversation actually occurred has been known by all Parties since Matt and Fidelity filed their answer in March 2023. [*Id.* at ¶ 4.] They further argue that Matt's whereabouts in the weeks leading up to the sale of Fidelity is not a material factual dispute because the Parties agree that Matt was at Fidelity on September 17, 2021, which is the day that Sara believes the alleged conversation most likely occurred. [*Id.* at ¶¶ 5-7.] As to RFP 5, Matt and Fidelity argue that Sara's deposition testimony is not new information and in fact

4

contradicts her own admission that she was a Director of Fidelity. [*Id.* at ¶ 9 (citing dkt. 25 Sara's Answer to Matt and Fidelity's Counterclaim)].

In reply, Sara and Sara's Trust reiterate that the new information learned at Matt's deposition was Matt's assertion that he had not been at Fidelity in the weeks leading up to the sale. [Dkt. 77 at 2-3.] They also dispute Matt and Fidelity's characterization that Sara is certain about the exact date the conversation took place. At her deposition, Sara testified, "I can't say for certain that it happened on the day of the sale, but I do know that it happened, and my mom was there, and we were in my office. . . . I just knew that it was days leading up to the sale." [Dkt. 76-3 at 2, 3.] With respect to RFP 5, they note that Matt admitted during his deposition that he approved Sara serving as a Director of Fidelity and that Sara testified at her deposition that she was uncertain how she became a Director. [Dkt. 77-1 at 5-6.] They argue that "Given Matt's admissions during his deposition and Sara's uncertainty about her role as director discussed during her deposition, good cause exists to obtain corporate records relating to Sara's role as a director." [Dkt. 77 at 4].

The Court finds that Sara and Sara's Trust have shown good cause to serve RFPs 1-4 based on the new information they learned at Matt's deposition. Phyllis' declaration corroborates Sara's testimony on a material factual dispute in this case—specifically, whether Matt misrepresented that Sara's Trust would directly receive 30% of the proceeds from the sale of Fidelity. Matt testified at his deposition that Phyllis' declaration cannot be correct because he had not been at Fidelity's office in the weeks leading up to the sale, which is when Phyllis believes the conversation took place. Establishing whether Matt was in Indiana at Fidelity in the weeks leading up to the sale or whether he was in Florida as he testified in his deposition is therefore relevant to a material factual dispute at the heart of this litigation. The Court does find, however, that the scope of RFPs 1-4 is overbroad. The issue is Matt's location in the weeks leading up to September 17, 2021. Thus,

there is no need for Matt and Fidelity to produce records dating back to January 1, 2021. Therefore, when Matt and Fidelity respond to RFPs 1-4, they may interpret the "Lead-Up Period" to mean "August 1, 2021, to September 17, 2021."

The Court finds that Sara and Sara's Trust have not shown good cause to serve RFP 5. Matt and Fidelity claimed that Sara was a Director of Fidelity in their Original Counterclaim on March 17, 2023. [Dkt. 16 at 20.] If Sara was uncertain about how she became a Director, she could have served RFP 5 at any point during the discovery period to uncover how she was approved to serve in that position. *See Allen v. Brown Advisory, LLC*, 41 F.4th 843, 853 (7th Cir. 2022) ("Generally speaking, it is reasonable to conclude that a plaintiff is not diligent when he in silence watches a deadline pass even though he has good reason to act or seek an extension of the deadline.").

For these reasons, the Plaintiffs' Motion to Serve Belated Requests for Production is **GRANTED IN PART** and **DENIED IN PART**.

### IV. CONCLUSION

For the reasons explained above, the Plaintiffs' Motion to Serve Belated Requests for Production, [dkt. 73], is **GRANTED IN PART** and **DENIED IN PART**. The Defendants shall respond to RFPs 1-4 by **February 22, 2024**. In their response, they only need to produce documents relevant to RFPs 1-4 from the period of August 1, 2021, to September 17, 2021. The Plaintiffs' request to serve RFP 5 is **DENIED**.

**IT IS SO ORDERED**.

Date: 2/9/2024

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

Michael A. Dorelli
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
michael.dorelli@dentons.com

Meaghan Klem Haller
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
meaghan.haller@dentons.com

Gregory A. Neibarger
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
greg.neibarger@dentons.com

Seema Ramesh Shah
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
sshah@boselaw.com

Dakota Christopher Slaughter
Bose McKinney & Evans LLP
dslaughter@boselaw.com

Paul D. Vink
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
pvink@boselaw.com